Good afternoon. I'm Kent Saxby. I'm from Kalispell, Montana. I represent the plaintiff and the appellant in this matter, Big Meadows Grazing Association. This case has been fairly extensively briefed. And as the Court is aware, it primarily involves an issue of statutory construction, specifically 16 U.S.C. Section 3837A. Although it primarily involves practical construction, I think from a practical standpoint, the essence of this case boils down to whether the government, when it does not purchase fee-titled a property and therefore only pays a percentage of the fair market value of that property, has the right, without the consent of the landlord, to unilaterally implement a conservation property or a conservation plan for a property that's enrolled in the Wetland Reserve Plan. Well, if somebody has an easement, as a matter of general law, are they required ordinarily to ask permission of the fee owner to exercise their rights under the easement? No, I don't believe so. But I believe here we have a statute that specifically talks about the need. Well, that's different. See, it's one thing to make your argument under the statute, but it's another to emphasize that the United States didn't buy all the rights to the property. It's true they didn't, but they bought a lot. They probably brought most of the sticks in the bundle. So to suggest that there's something because there's a remaining stick in the bundle that there's a fee owner does not necessarily suggest to me that the easement owner has to get the fee owner's permission to do something, which is how I took your statement to suggest. Well, I would agree with that. But I also think that you have got to read or consider the easement in connection with and in light of the clear language of the statute, as well as the regulations and the agency's operating manual. Now, the reason this case is before the court today is because the Natural Resource and Conservation Service, NRCS, or the agency, failed to comply with the requirements of the enabling statute dealing with the Wetlands Preserve Program and also failed to comply with its own regulations and its operating manual. The briefs that have been filed have focused on 3887AA. And what that requires, you know, and that sets forth four elements or criteria that have to be addressed or met in order to enroll property in the Wetland Reserve Program and specifically says there needs to be a grant of an easement and an agreement to implement a conservation plan. You know, the government's contention is that the easement grant is so broad that there's no need for an easement or for a conservation plan, as well. But I think this argument ignores both the legislative history, which is addressed in the briefs, and I will only talk about briefly today in a minute, but it also overlooks Subsection B of Section 37A. In this subsection, you know, it provides a, quote, an owner granting an easement under Subsection A of this section shall be required to provide for the restoration and protection of the functional values of the wetland pursuant to a wetland easement conservation plan. Subsection B was only addressed in passing in the briefs, but I think when you consider this subsection and read it, you know, in conjunction with Subsection A, it's very clear that there needs to be a wetland conservation plan between the government and the landowner. What is it in B that suggests the plan has to be between the two? Clearly, there's a plan, and even A suggests that there's a plan, there's going to be a plan implemented, but what is it in B that says it's a plan that the owner has to agree to? Well, it doesn't say that specifically, but I think if you read them together and you look at the legislative history and you look at the regulations and you look at the operating manual, it's clear that a plan is developed with the input from and involvement of the landowner. And there's no reason in A to not have the four criteria if you don't have, I mean, why not just say an easement granting the government the right to do everything? Okay, well, that easement would probably do the job. I mean, I read it to suggest that easements can take many different forms, and you have to make sure if the government's going to take this land into the program that you're going to be able to implement a wildlife, a wetland easement conservation plan because you can have an easement that wouldn't permit you to do that. You could have an easement that just permits passage over the property. That's correct. But in this case, you've got an easement that's pretty broad. Very broad. And an easement that by its own terms would not prevent the Secretary from implementing a program unless there's something else outside that requires the consent or agreement of the owner. Well, I think the legislative history shows that both the Senate and the House envisioned an agreement with the landowner and the government, and then it went to conference committee. The government has actually purchased a broad easement, most of the bundles of sticks in this bundle of property. If the government's purchased most of the sticks, then what is it that Congress intended to give the owner an additional right to agree to a particular plan? In effect, a veto power over the plan. Well, I think that the landowner, I think Congress intended the landowner to have a number of things. I think it intended to have the ability pursuant to compatible use permits to continue to utilize the property. Some cases in situations that would not necessarily further the easement, might not adversely affect the easement, but the classic example is haying and grazing. In addition, we don't always have, it's not just wetlands that get enrolled in this program. In fact, in this particular case, the property that is involved has a big meadow, which is primarily a wetlands, and it also has some foothills around the meadows that is fairly arid and really more timberland. The landowner reserves the right under a compatible use permit to be able to go in and do timber harvesting. As long as that's not going to adversely affect the wetland values of the property and whatnot, that's going to be a permissible use. I think that the government and the landowner have to work together in connection with developing this plan. To me, there's a significant difference between an easement and the conservation plan. The easement grants the legal rights. The conservation plan sets forth the objectives of the restoration plan project. It sets forth the restoration activities that will occur. It sets forth standards for allowing compatible uses. There's about 10 or 12 different compatible uses that can occur. Why prevent the owner, if he had the rights you're arguing for, from simply saying no to virtually every plan that's put in front of him because he doesn't want it to interfere with the timber or grazing operations that he contemplates? I guess the government's effectively prevented that because there's currently no timber harvesting going on or grazing going on or haying going on. We aren't doing that. We realize that we can only do that pursuant to a compatible use. What we would like, though, is a plan that sets forth standards for compatible use. It's not part of the record, but as the district court order said, there was a settlement conference ordered by the district court and that didn't result in a settlement. That's not exactly accurate. It actually did result in a settlement. The parties signed an agreement at a settlement conference. Part of that agreement was that the government would go back, would revise their plan, and would include compatible use standards in their plan. Then they came back after the settlement conference and said, no, we can't come up with those. It's premature to do that. We can't come up with these standards. As a result, the settlement master, Magistrate Erickson, reported to Judge Malloy that the parties were unable to resolve the matter by settlement, and so then Judge Malloy ruled on the motion to dismiss, granting the government's motion to dismiss. Actually, the motion converted to a motion for summary judgment. But I don't propose to order anything, but if the parties wanted to confer and notify us that this case is a candidate for the circuits mediation program, we'd be happy to refer it in that direction at least for a period of time. That's just a comment to both of you, and you can let us know if there's reasons you want us to withhold submission of the case. But the problem we have, the case alive before us right now, we're left in kind of an amorphous situation because it's not hard to put together a set of facts that would give one party or the other enormous power. Obviously, the government's position is that the government's got the enormous power now, and the fee owner is, in effect, at the mercy of whatever plan the government decides to implement, and whatever use can be made of the property after that, that's the best the fee owner can expect. The converse is that the fee owner has a veto power and can basically say no to whatever is offered up by the government. Is there a way out of that quandary? Well, I think that the agency's regulations and the operating manual provide for a mechanism that would have allowed us to avoid that problem. Unfortunately, the agency failed to follow it. That mechanism is the preliminary plan that is very clear that the agency needs to develop. It has to develop it for ranking purposes to determine whether it's appropriate to enroll the property in the Wetland Reserve Program. It needs to develop it so that it can solicit the input of the landowner before the easement grant occurs. It needs to do it because it needs to get the input to get approval of the landowner up front before the easement grant occurs regarding how the property is going to be restored and what the conservation practices will be. Unfortunately, the government failed to develop that preliminary plan, or if it did, it didn't share it with the owner. All it told the owner was is that we're going to leave the property basically the same. We're going to do about $80,000 worth of improvements. That was all before the grant, and this is uncontested. The grant occurs. The landowner takes a substantial sum of money. There's no dispute about that. Then the government comes in and says, no, no, we're changing our mind. We're going to revise the conservation plan, or we're going to change our restoration activities considerably. Now they're talking $1.7, $1.8 million. Then they change again later. Instead of recreating a meander stream, they decide, well, we're going to impound the water and turn it into a swamp. Each of these changes affects, most significantly, the clear reserve rights of the landowner, which deal with hunting, fishing, and other recreational opportunities, which my client felt that it would be able to utilize and make some money on in lieu of cattle grazing and hay. Now they've actually decided not to. The most recent rendition of the plan is that we're no longer going to impound. We're going to create a very wide channel that kind of recreates the historic location of the stream. But even the Fish and Wildlife Service, my understanding is that just this week, they filed objections with the Corps of Engineers objecting to the NRCS's plan in that regard because they think it's too wide and not deep enough, too shallow of a stream, so it's not going to create habitat for good fishing. So they're objecting to it, as is my client. Anyway, long and short of it is that the government failed to develop this preliminary restoration plan, which if it had, both parties would have gotten into the thing knowing full well it was going to happen. The government failed to follow its rules, failed to do that, and now all of a sudden we're already at a bit of a loggerhead. But there's no one to blame for that except the government itself. I also think it's... Presumably your client could have negotiated for a different easement, could have retained rights that he didn't retain. Presumably. My understanding was that the easement was presented to them and they were told that basically this is our standard easement, this is a take-it-or-leave-it type thing. But they decided to take it. I want to save a couple of minutes for rebuttal. I do want to make a couple of points. I think the regulations very clearly show that there's a need for an agreement. One, you have 7 CFR section 1467.6b. That has to do with the preliminary plan, excuse me. Point 10b, 7 CFR section 1467.10b. That provides that the landowner shall, quote, agree to the long-term restoration, protection, enhancement, maintenance, and management of the easement in accordance with the terms of the easement and related agreements. That's the regulation. And possibly even more significant is 7 CFR section 1467.12 dealing with modifications. Point 12a deals with modifications of the easement. And point 12b deals with modifications of the conservation plan and states, quote, require agreement from the landowner, if there's any, end quote, pertaining to if there's substantial modifications of the plan. The logical question is why would... Modifications to the WRPO, which are substantial and affect provisions of the easement, will require agreement from the landowner. Is something required from the landowner if the provision of the easement is not affected? I'll look for a literal reading of the regulation, no. But it certainly talks in terms of when there's substantial modifications of the plan, I guess they do have to affect the easement as well. But when there's substantial modifications of the plan, plus it makes no sense to have both an A and a B. A deals with the modifications of the easement. B deals with modifications of the plan, although it does include the language where they substantially affect the easement. I think that poses a problem because it suggests that, and it's inherent, that the easement, that's a document in which the fee owner has a continuing right. If the easement changes, if the fee owner is on the other side of that agreement, if the requirement to get the landowner's consent or agreement with regard to changes in the WRPO is limited to situations where the easement's affected, that begins to suggest that, yeah, the easement's the key document here. If the easement isn't changed, then you don't need to get the landowner to sign off. But underlying all of this is that the landowner knew going in from a preliminary plan what the government was going to do. The government itself didn't know going in what it was going to do. And it's not fair to hold the landowner's feet to the fire and say, well, the government has all these rights. It can do whatever it wants when it didn't buy the whole stick, the bundle of sticks. You know, there's co-ownership here. And it makes no sense to require landowner consent for certain modifications when there's no consent required initially to the plan, whether that's a final plan or a preliminary plan. Yeah, I'd like to reserve a little time, so unless there's any questions, I'll step down for right now. Thank you. Thank you. May it please the Court, I'm Robert Klotz for the federal affilies. This is a case about the Wetlands Restoration Program. Farming destroys wetlands, and this program is designed to take farmland where wetlands once existed and recreate the wetlands. In this case, the United States has paid Big Meadows $1.9 million for an easement allowing the United States to undertake any restoration activities. In that easement, Big Meadows gave up its right to veto or approve or disapprove of specific restoration plans, and now Big Meadows would like to revise that agreement and assert a veto power over restoration plans. Big Meadows says that the easement infringes on its property rights, but Big Meadows has not made a claim for breach of the easement. And I think the reason for that is, as you have said, there really wouldn't be a claim there. The United States has purchased most of the sticks in the bundle. Big Meadows' legal claim is statutory, that the statute, specifically subsection A of 16 U.S.C. 3837A, gives Big Meadows a right to approve or veto final restoration plans. Big Meadows also makes what we contend is a new argument, not raised below, that regardless of its statutory rights, an agency manual somehow gave it an enforceable right to see, at least, a preliminary restoration plan before it signed the easement. We believe Big Meadows is wrong, and the district court judgment was correct and should be affirmed. There is nothing in the easement, the statute, or the applicable regulations that gives the landowner a veto right. And I'd like to just address very briefly the easement, the statute under plain meaning analysis, and the statute, if the Court considers it ambiguous. The easement is very clear, and the rights it grants the United States are very broad. It reserves to Big Meadows only a few narrow rights. Among those reserved rights to Big Meadows is not a right to approve restoration plans. The easement specifically conveys to the United States all rights not reserved to Big Meadows. And if there was any ambiguity in that statement, it affirmatively and expressly grants the United States the rights to undertake any restoration activities. So I think the conclusion is that under the easement, there simply isn't an argument that Big Meadows has a veto right. So we turn to the statute. Under plain reading, the statute doesn't require Big Meadows to approve restoration plans. So any plan that the government chose to adopt, that was enforceable. That's the end of it. With some limits. With limits. The limits are it has to be a restoration plan. The purposes of the easement itself describe, in broad terms, I grant you, that we're here to restore wetlands and other natural values. The United States could not, in the guise of doing restoration, decide to put a casino on the property. That's out. The other limits are the express reserved rights in the easement. Reserved rights to Big Meadows. Subsurface mineral rights. Control of public access. And undeveloped recreational rights. Quiet title to those rights, which I don't think adds anything to them in this context, and record title. We have no intention and would have no legal right to turn this into a public park and grant public access. That would contravene Big Meadows reserved rights. Returning to the plain reading analysis, Big Meadows' argument is essentially that there must be two separate agreements. An easement and a separate agreement about the restoration plan. And we just simply don't see that in the statute. It says there must be an agreement to grant an easement and to implement a restoration plan. That statute seems to be sufficiently broad to allow the United States to use one document. If it so chooses, in this case it used one document, the easement, to address both the statutory requirement to have an easement and the statutory requirement to have an agreement from the landowner allowing restoration to be carried out. In addition, I think it's worth mentioning that any statutory construction that would give Big Meadows a veto right is simply inconsistent with the other statutory sections, which prescribe quite clearly that the Department of Agriculture is to be in charge of the restoration claim. If the court disagrees and thinks the statute is ambiguous, then I think we have to turn to the legislative history and the agency's interpretation of the statute it administers. And the legislative history is quite clear. The Senate bill had language requiring landowner approval of restoration plans, and that language was eliminated from the final statute. In its reply brief, Big Meadows argues that a House bill also had landowner approval language. The fundamental point is if it did, that language also did not make it into the final statute. As for the agency's interpretation of the statute, the agency's interpretation is set out very clearly in regulations. The regulations once provided that landowners would approve restoration plans, but have not since 1995. So the agency has clearly addressed the issue and decided that landowners do not have approval rights. These are notice and comment regulations entitled to Chevron deference. About the preliminary restoration plan, let me just address that. This is an argument based on the agency manual. The 1995 regulations eliminated virtually all references to preliminary restoration plans and certainly eliminated the requirement that landowners see preliminary restoration plans. That requirement existed in 94 briefly and was eliminated by 95. So Big Meadows is relying on an agency manual. I think there's several things wrong with this argument. I don't think it was raised below. Big Meadows discussed the agency manual below. But as I read the briefs, below Big Meadows was directing everything towards the statutory argument and argued that by looking at the manual, one could see that they were right about the statute. Second, agency manuals aren't binding. And Big Meadows does not contend otherwise. It concedes in its briefs, I believe, that the manual is not binding. That's established law in the circuit for some time. It's probably also worth mentioning if one were trying to derive enforceable obligations from this manual, it wasn't put in final until 2001 after the 1995 easement was executed. If the manual said landowners have a right to see preliminary restoration plans, I think that would be contravening both the statute and the regulations, and so it couldn't be followed. And lastly, I think it would be incorrect to conclude, even if there were some right in the manual to see restoration plans, I don't see that the remedy for failing to show the owner a restoration plan would be to now give that owner a veto over final plans and actual restoration work. So in conclusion, I think given the breadth of the easement, the clarity of the statute, the deference to the agency's interpretation, if there is any ambiguity, we respectfully request that the Court affirm the district court judgment below. Thank you. Oh, I did want to say that we would not request you withhold your decision. I think we had considered when we first got the case whether this was a settlable case, and we think that what we really need is a resolution to the matter. Thank you. Mr. Saxby. I guess I would have to concur as well that I don't believe that this is a matter that can get resolved by settlement. Clearly the government and the landowner in this case differ on what the legislative history provides. What is very clear is that the Senate bill provided a provision or included a provision requiring an agreement with the landowner. There's nothing in the House bill that indicates that that was being removed. In fact, the House bill itself is cited in the brief, so I don't need to go into it in depth, but the House bill itself talked about a restoration plan to which the participant must agree and then list a bunch of items that would go into a restoration plan. They're not in the details that aren't in the easement. There's no reason to believe that Congress would take what was in both the Senate bill and which I believe appears to be in the House bill and then say, well, we're putting it into conference and we're taking that out. I guess it's possible, but I don't see that having happened. As far as the preliminary plan, that issue was raised below. I cited on pages 17 and 18 of the appellant's reply brief the language that was submitted to the district court regarding that. We very clearly talked about the need to have provided a preliminary restoration plan. The government's failure to do so, to argue that it wasn't raised below, it just is the opposite of exactly the language that's quoted there in the brief. You have to also understand that what happened below was extremely brief. We filed a complaint. The government filed a motion to dismiss. The motion to dismiss was briefed, and Judge Malloy ruled. He didn't rule for four or five weeks because there was a settlement conference in the meantime, but he ruled very quickly after the complaint was filed. So no answer was filed. No discovery occurred. But it's very clear that one of the alternative issues advanced by the landowner, McNeadows in this case, was the failure to have provided a preliminary restoration plan, so therefore the failure of the landowner to understand what was going to happen on the plan. As far as the agency's discretion, the agency has discretion to the extent it doesn't exercise that discretion in contravention of the enabling statute. In addition, McNeadows believes that the statute is clear in requiring an agreement between the government and the landowner, or at least an agreement in principle through this preliminary restoration plan process. To the extent that the statute's not clear, it's equally clear that the agency itself has not exercised its discretion to say that it's not required to have an agreement with the landowner. And in fact, you know, the regulations I cited, 1467.10b or 10d and 1467.12, both imply strongly that an agreement is required. You know, as they say, the devil's in the details. And without an agreement, nobody knows what the details are. And unfortunately, the government failed to ever come up with a plan ahead of time. In fact, maybe they had a plan and they didn't share it. Their plan originally was we weren't going to do anything with the property. And, you know, that's the basis on which the landowner moved forward with this process. As far as the reserved rights, you know, the government contends that only if the plan affects those reserved rights is there any objection or right for the landowner to object. You know, it's kind of interesting that the government raises that argument because on one of the plans that the government presented, we still don't know exactly what plan's going to get implemented here. They keep changing dollar amounts, what's going to happen as far as restoration practices. Fencing is going on. They're trying to get core approval to start doing the stream bed restoration. But in one of the plans, they specifically provided in there that hunting and fishing would be considered as a compatible use. And those were, recreation was clearly a reserved right for the landowner. They shouldn't have to go get a compatible use permit. You know, that was the basis on which the landowner objected to that. On another one, they said that grazing and haying would only be considered from the period as a compatible use from the period of August 1 through September 30th. Maybe it was only grazing, it might not have been haying. But after August 1 through September 30th, you know, that's nothing that was in the easement. In the easement, it specifically said that grazing would be allowed as a compatible use. It didn't say only two months a year of the compatible use. But yet their plan wanted to further restrict that reserved right. If there's any questions, I have nothing further. Thank you, both counsel, for your argument. Case is submitted. That concludes today's calendar, and the court is in recess. All rise. This court is dismissed as we stand adjourned.
judges: Browning, Alarcon, Clifton